UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KOLOGIK CAPITAL, LLC,
     Plaintiff and
     Defendant-in-Counterclaim,


     v.                                    CIVIL ACTION NO.
                                           18-11168-GAO

IN FORCE TECHNOLOGY, LLC,
BRANDON-COPSYNC LLC,
and BRANDON D. FLANAGAN,
     Defendants and
     Plaintiffs-in-Counterclaim.

**REPORT AND RECOMMENDATION RE:**
**PLAINTIFF'S RENEWED MOTION FOR INJUNCTIVE RELIEF**
**(DOCKET ENTRY # 160)**

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION FOR SANCTIONS**
**(DOCKET ENTRY # 160)**

**March 14, 2022**

**BOWLER, U.S.M.J.**

     Pending before this court is a motion for sanctions pursuant to Fed. R. Civ. P. 37 ("Rule 37") and renewed motion for injunctive relief filed by plaintiff Kologik Capital, LLC ("plaintiff").  (Docket Entry # 160).  Defendants In Force Technology, LLC ("IFT"), Brandon-COPsync LLC ("BCS"), and Brandon D. Flanagan ("Flanagan") (collectively, "defendants") oppose the motion for sanctions.  (Docket Entry # 203).  On March 8, 2022, this court conducted a hearing and took the motion (Docket Entry # 160) under advisement.  (Docket Entry # 212).

BACKGROUND

Plaintiff initiated this action on June 5, 2018. (Docket Entry # 1).[1] Throughout this litigation, the parties have engaged in a number of discovery disputes and have cycled through a number of different counsel.[2]

In March 2019, defendants' then-counsel filed an assented-to motion to withdraw, which the district judge allowed (Docket Entry ## 48, 49), and attorneys from Chavous Intellectual Property Law, L.L.C. ("Chavous") filed notices of appearance. (Docket Entry ## 46, 47). On September 20 and 23, 2019, plaintiff's initial counsel filed unopposed motions to withdraw (Docket Entry ## 74, 78), which this court granted (Docket Entry # 76).[3] Plaintiff's successor counsel had filed notices of appearance the month prior. (Docket Entry ## 68, 69).

On January 17, 2020, plaintiff filed a motion against BCS and Flanagan for sanctions (under Rule 37(e)(1)) and to compel

---

[1] The amended complaint alleges patent and trademark infringement, unfair competition, false advertising, trademark dilution, false designation of origin, conversion, violation of chapter 93A of Massachusetts General Laws, and unjust enrichment. (Docket Entry # 38). This Background section sets forth only the procedural history relevant to plaintiff's motion for sanctions (Docket Entry # 160). For further information on the underlying facts and claims in this case, this court refers to its report and recommendation dated January 13, 2022 (Docket Entry # 202).

[2] As further detailed below, defendants are on their fifth set of counsel and plaintiff on its third.

[3] This court's allowance of Docket Entry # 78 is not numbered on the docket.

the production of documents.  (Docket Entry # 90).  After
conducting a hearing, this court issued a memorandum and order
on March 11, 2020 ("the March Order") (Docket Entry # 103),
allowing in part and denying in part plaintiff's motion for
sanctions and to compel (Docket Entry # 90).  As detailed in the
March Order, this court determined that BCS and Flanagan had,
beginning on June 2, 2017, a duty to preserve "electronically
stored documents" and that they "did not preserve relevant
documents consisting of lost electronically stored information
that was formerly in [their] possession, custody, or control."
(Docket Entry # 103, pp. 4, 9) (internal quotation marks
omitted).

        The March Order directed BCS and Flanagan "to take
responsibility for recovering additional lost or destroyed
electronically stored documents that should have been preserved
with respect to third-party customer communications after June
2, 2017."  (Docket Entry # 103, p. 9) (internal quotation marks
and brackets omitted).  The March Order did not, however,
delineate or restrict the means by which BCS and Flanagan could
fulfill their responsibility to recover lost or destroyed
electronically stored documents.[4]  Separately, the March Order

_____

[4] In later submissions to this court, plaintiff has maintained
that this court's direction that BCS and Flanagan "take
responsibility for recovering additional lost or destroyed
electronically stored documents" required them to issue third-

denied requested monetary sanctions "without prejudice to be renewed at the conclusion of the case" and reserved a request for a jury instruction or presentation of evidence of the destruction at trial for the district judge.  (Docket Entry # 103, p. 9).

On March 31, 2020, Chavous filed a motion to withdraw as defendants' counsel.  (Docket Entry # 106).  Plaintiff opposed the motion to withdraw and asserted that defendants had "failed to comply" with the March Order.  (Docket Entry # 107, p. 2). The following day, Chavous filed a reply explaining that defendants had demanded it immediately "withdraw as counsel" and "cease all communications and representations," thereby precluding Chavous's ability to comply with the March Order. (Docket Entry # 109, p. 1).  On April 1, 2020, this court allowed Chavous's motion to withdraw (Docket Entry # 106). Weeks later, on April 23, attorneys from Sunstein LLP ("Sunstein") filed notices of appearance on behalf of defendants.[5]  (Docket Entry ## 111, 112).

In June 2020, "[t]o comply with the [March] Order, [] Flanagan 'sent requests [for documents] to 19 former BCS []

_____

party subpoenas to nonparties with whom BCS and Flanagan communicated electronically.  See (Docket Entry # 114-2) (Docket Entry # 114-4, p. 4).  This court disagreed.  See (Docket Entry # 155, pp. 21-22).
[5] Plaintiff filed a motion for defendants to disclose successor counsel on April 6, 2020.  (Docket Entry # 110).

customers consisting of school districts and police
departments.'"   (Docket Entry # 203, p. 2) (citing Docket Entry
# 155, p. 16).[6]   "He did not provide copies of the emails to
plaintiff through his counsel or otherwise and did not inform
plaintiff at that time that he was making these requests."
(Docket Entry # 155, p. 16) (citing Docket Entry # 114-1, ¶ 3).
After plaintiff learned of Flanagan's efforts, it "'strongly
objected'" and cited "'numerous concerns including with respect
to chain-of-custody issues, completeness of the produced
documents, and whether third parties [were] even being asked to
produce all responsive communications.'"   (Docket Entry # 203,
p. 3) (quoting Docket Entry # 114-8); see (Docket Entry # 155,
p. 17).   "Plaintiff further protested that 'serving subpoenas on
the third parties with whom [d]efendants communicated during the
relevant period, as [plaintiff has] repeatedly requested, could
have avoided many of these issues.'"   (Docket Entry # 203, p. 3)
(quoting Docket Entry # 114-8).   A few days after defendant
advised plaintiff "of a 'follow-[up] effort to expand and
expedite the collection and production of customer

---

[6] "11 of the 19 requests [] asked for any correspondence with BCS
or [Flanagan] '"from the period of June 2017 and after,"' and
"[t]he remaining requests asked for emails BCS or Flanagan sent
to the school district or police department, particularly in the
last seven months of 2017."   (Docket Entry # 155, p. 16)
(quoting (Docket Entry # 116-1, ¶ 18)).   "Production in response
to Flanagan's 19 requests was meager."   (Docket Entry # 155, p.
18).

communications' and suggest[ing] [to] meet and confer,"
plaintiff "filed [a] motion for contempt and sanctions [Docket
Entry # 113]" on July 14, 2020.  (Docket Entry # 203, p. 3); see
(Docket Entry # 133) (Docket Entry # 155, p. 19).  Sunstein
filed an opposition on behalf of defendants.  (Docket Entry #
116).

On September 18, 2020, Sunstein filed an unopposed motion
to withdraw as defendants' counsel due to defendants' failure to
pay its legal fees and "a significant breakdown in the attorney-
client relationship and communication."  (Docket Entry # 124, p.
2).  On October 7, 2020, the court stayed deadlines "for 30 days
to permit [] defendants to retain successor counsel."  (Docket
Entry # 125).

On December 1, 2020, plaintiff filed a motion for
injunctive relief that sought, inter alia, an order "compelling
[d]efendants to produce all responsive documents and things that
still exist in their possession."  (Docket Entry # 128, p. 1).
Later that month, attorneys from Sheehan Phinney Bass & Green PA
("Sheehan Phinney") filed notices of appearance (Docket Entry ##
134-35) on behalf of defendants, and the court allowed
Sunstein's motion to withdraw (Docket Entry # 124).  (Docket
Entry # 139).  On January 13, 2021, Sheehan Phinney filed an
opposition to plaintiff's motion for injunctive relief (Docket
Entry # 128).  (Docket Entry # 142).

In March 2021, plaintiff switched counsel again.  (Docket Entry ## 150-52).  On March 26, 2021, plaintiff's counsel emailed Sheehan Phinney a proposed list of "search terms" that it could "run in order to locate documents in response to" defendants' production requests.  (Docket Entry # 175-1, p. 58).[7]

The next month, on April 12, counsel for the parties appeared before this court for a hearing on plaintiff's motions for contempt and sanctions (Docket Entry # 113) and for injunctive relief (Docket Entry # 128).[8]  (Docket Entry # 154).  During that hearing, Sheehan Phinney represented that it had "only recently been able to get from" Sunstein "the metadata that went along with [Sunstein's] prior productions" and

---

[7] Docket Entry # 175 is a motion for leave, filed by plaintiff, to file a supplemental brief in support of its motion for sanctions (Docket Entry # 160).  See (Docket Entry # 175).  Plaintiff filed therewith a proposed supplemental brief (Docket Entry # 175, pp. 1-4) and attached to the proposed brief a declaration and exhibits (Docket Entry # 175-1, pp. 5-58).  After this court granted plaintiff's motion for leave (Docket Entry # 200), plaintiff filed its supplemental brief (Docket Entry # 201).  It appears, however, that plaintiff inadvertently did not attach to its supplemental brief (Docket Entry # 201) the declaration and exhibits attached to its proposed supplemental brief (Docket Entry ##, 175, 175-1).  Accordingly, when referencing the declaration or exhibits, this court cites to those documents filed with plaintiff's proposed supplemental brief (Docket Entry # 175-1, pp. 5-58).

[8] This court lacks the authority to rule on a party's motion for injunctive relief but may, upon referral by the district judge, issue a report and recommendation regarding such motion.  See Conetta v. Nat'l Hair Care Centers, Inc., 236 F.3d 67, 71 (1st Cir. 2001); see also 28 U.S.C. § 636(b)(1); Rule 3(a)(3), Rules for United States Magistrates in the United States District Court for the District of Massachusetts.

therefore was still evaluating the metadata.  (Docket Entry #
157, 6:5-7).  Because of this, Sheehan Phinney could not
"represent to [this court] that [defendants'] document
production [was] complete."  (Docket Entry # 157, 6:5-10).
Sheehan Phinney agreed, however, to complete defendants'
production within 30 days (i.e., by May 12, 2021) (Docket Entry
# 157, 6:5-15, 8:18-23), which prompted the withdrawal of
plaintiff's motion for injunctive relief (Docket Entry # 128)
"without prejudice to be[] renewed if the production [was] not
made" (Docket Entry # 153); see (Docket Entry # 157, 28:18-25).
This court took plaintiff's other motion, for contempt and
sanctions (Docket Entry # 113), under advisement.  (Docket Entry
# 154).

On April 20, 2021, this court issued a report and
recommendation on plaintiff's motion for contempt and sanctions
(Docket Entry # 113), recommending that the district court (1)
deny plaintiff's request for an order requiring defendants to
appear for a show-cause hearing as to why they should not be
held in contempt; and (2) allow plaintiff's motion to otherwise
"remain pending on the docket for future proceedings, if any, as
determined by the district judge."[9]  (Docket Entry # 155).

---

[9] On February 2, 2022, the district judge adopted this court's
report and recommendation (Docket Entry # 155), denied
plaintiff's motion for contempt and sanctions (Docket Entry #
113) to the extent it sought contempt proceedings, and noted

On May 21, 2021, plaintiff filed a motion for sanctions (Docket Entry # 160), at issue in this memorandum and order, and renewed therein its motion for injunctive relief (Docket Entry # 128).  A few days later, on May 25, Sheehan Phinney filed a motion to withdraw as defendants' counsel.  (Docket Entry # 162).  Plaintiff opposed the motion.  (Docket Entry # 163).

On July 14, 2021, during a hearing before the court (Docket Entry # 172), Sheehan Phinney represented that it had "gathered all of [IFT's] documents" and there was "no threat that IFT [was] destroying documents."  (Docket Entry # 198, 24:7-10); see (Docket Entry # 198, 27:7-8).[10]  "The actual cost of [] going through all those documents," Sheehan Phinney explained, became a "cost issue" for defendants that contributed to the breakdown of defendants' attorney-client relationship.  (Docket Entry # 198, 40:4-7).  After the hearing, plaintiff's counsel spoke with an attorney from Sheehan Phinney "about receiving cooperation from [d]efendants regarding [d]efendants' requests for production to [plaintiff] and [plaintiff]'s responsive document production, including with search terms that had been proposed by [plaintiff] in March of 2021."  (Docket Entry # 175-1, p. 5,

---

that "[a]ll other pending discovery issues, including sanctions, remain[ed] within [this court's] authority . . . ."  (Docket Entry # 205).

[10] This court refers to the transcript of the July 14, 2021 hearing (Docket Entry # 198) using the transcript's internal page numbers.

¶ 2).  After the Sheehan Phinney attorney "represented that search terms had been formulated," plaintiff's counsel "requested that the search terms be provided to enable [plaintiff] to make its document production."  (Docket Entry # 175-1, p. 5, ¶ 3).  The Sheehan Phinney attorney "responded that he would not share the search terms because he would not be paid by [d]efendants to do so."  (Docket Entry # 175-1, p. 5, ¶ 3).

On July 27, 2021, Sheehan Phinney filed a renewed emergency motion to withdraw.  (Docket Entry # 173).  After conducting a hearing on August 18, 2021, this court granted Sheehan Phinney's motions to withdraw (Docket Entry ## 162, 173).  (Docket Entry # 178).  Later that month, defendants retained new counsel from three separate law firms.  (Docket Entry ## 186-89).

The deadline for the parties to complete fact discovery in this case was September 12, 2021.[11]  As noted previously, on March 8, 2022, this court conducted a hearing on plaintiff's motion for sanctions (Docket Entry # 160) and took the motion under advisement.  (Docket Entry # 212).

---

[11] See (Docket Entry # 43-1) (parties' proposed scheduling order providing that fact discovery deadline be "60 days after claim construction decision"); (Docket Entry # 61) (status conference summary noting that this court extended certain earlier deadlines but otherwise adopted the parties' proposed schedule); (Docket Entry # 172) (order by the court dated July 14, 2021, adopting this court's report and recommendation on claim construction).

DISCUSSION

Plaintiff seeks sanctions against defendants on the basis that they have "fail[ed] to comply with their discovery obligations." (Docket Entry # 161, pp. 2-3). More specifically, plaintiff alleges that: defendants "have failed both to disclose substantial materials and to supplement their previous discovery responses," including interrogatories[12] (Docket Entry # 161, p. 9); despite defendant's representation at the April 12, 2021 hearing that it would produce documents within 30 days, "[d]efendants have produced nothing at all"[13] (Docket Entry # 161, p. 2); defendants have not produced any documents from ITF, despite Sheehan Phinney's representation at the July 14, 2021

---

[12] By way of example, plaintiff cites to interrogatory responses by IFT and Flanagan in which they stated that they would "'produce all nonprivileged, non-attorney work product documents within [their] custody and control' concerning various topics." (Docket Entry # 161, p. 9); see (Docket Entry # 161-5). Plaintiff maintains that, "despite [Fed. R. Civ. P.] 26(e)'s supplementation requirement," defendants have failed to supplement or otherwise correct those interrogatory responses. (Docket Entry # 161, p. 9). Defendants respond that "[t]here is nothing deficient about these interrogatory responses" because the interrogatories were "'answered separately and fully in writing under oath' as required by" Fed. R. Civ. P. 33(b)(3) and defendants' responses used "customary language." (Docket Entry # 203, p. 7) (quoting Fed. R. Civ. P. 33(b)(3)). Additionally, defendants argue, "there is no obligation to produce documents *in addition to* separate and complete written answers" and that they have made a complete production. (Docket Entry # 203, p. 7) (citing Fed. R. Civ. P. 33(d)).
[13] Furthermore, plaintiff alleges that, since the March Order, "[d]efendants have produced a total of four documents, none of which were the subject of the" March Order. (Docket Entry # 161, p. 3) (emphasis omitted).

hearing that it possessed "all of IFT's documents" (Docket Entry # 201, p. 1) (Docket Entry # 198, 24:7-10); and defendants made "it impossible for [plaintiff] to [timely] complete its own production in response to [d]efendants' discovery requests" because defendants' counsel has not conferred with plaintiff's counsel to agree on search terms (Docket Entry # 201, pp. 2-3).

Plaintiff also renews its motion for injunctive relief, wherein it sought "an order enjoining" defendants "from further destroying evidence, compelling [d]efendants to produce all responsive documents and things that still exist in their possession, custody, and control, and requiring [d]efendants to recover previously-destroyed documents in accordance with the [] March [] Order" (Docket Entry # 128, p. 1). See (Docket Entry # 161, p. 2). As noted previously, plaintiff withdrew its motion for injunctive relief (Docket Entry # 128) during a hearing before this court on April 12, 2021 (Docket Entry # 154), based on Sheehan Phinney's representation that it would complete defendants' production within 30 days thereof. See (Docket Entry # 157, 6:5-15, 8:18-23, 28:18-25). Plaintiff's withdrawal was without prejudice, subject to renewal upon defendants' failure to complete the production by the 30-day deadline. (Docket Entry # 153); see (Docket Entry # 157, 28:18-25).

During a conversation with Sheehan Phinney on May 19, 2021 (defendants' counsel at the time), plaintiff alleges that "it

was told, for the third time in fourteen months, that there had

been a 'breakdown' between [d]efendants and their counsel" and

therefore Sheehan Phinney "could not confer with [plaintiff] on

[d]efendants' production or the instant motion [Docket Entry #

160]."[14]  (Docket Entry # 161, p. 2); see (Docket Entry # 161-1,

p. 2, ¶ 9).  Plaintiff notes that, although "[d]efendants have

offered a number of reasons during the past year [as to] why

they have not complied, such reasons have not prevented

[d]efendant[s] Flanagan and IFT from conducting business,

raising money, and engaging in various other legal matters."

(Docket Entry # 161, p. 10).  According to plaintiff, then,

"[n]othing justifies [d]efendants' continued failure to produce

evidence, including supplementing [their] discovery responses

_____

[14] This breakdown of defendants' attorney-client relationship,
plaintiff maintains, is a cyclical "game" that defendants have
"played" multiple times since the March Order:

>    [A]s a deadline for producing discovery approaches,
>    [d]efendants . . . stop working with (and stop paying)
>    their counsel of record.  The discovery deadline passes
>    and nothing is produced.  Ultimately, that counsel seeks
>    to withdraw from the matter.  The [c]ourt gives
>    [d]efendants time to find new counsel, during which time
>    nothing is produced.  Eventually [d]efendants find new
>    counsel.  That counsel needs several months to 'get up
>    to speed' on the case, during which time nothing is
>    produced.  Finally, the new counsel starts to confer
>    with [plaintiff].  Just when [plaintiff] thinks it may
>    actually get some discovery, [d]efendants have a
>    'breakdown' with their new counsel.  And the game begins
>    another round.

(Docket Entry # 161, pp. 1-2).

[in which they] agree[d] to do so."   (Docket Entry # 161, p. 10).

In support of its argument that defendants have purposefully "avoided discovery by switching counsel several times," plaintiff points to a bankruptcy case involving defendants BCS and Flanagan: Lefoldt v. Brandon-Copsync, LLC (In re COPsync, Inc.), Ch. 11 Case No. 17-12625, Adv. No. 19-01004 (Bankr. E.D. La. May 6, 2020) (the "bankruptcy litigation").[15] (Docket Entry # 161, p. 2); see (Docket Entry # 161, p. 6) (Docket Entry # 161-3).   The court in the bankruptcy litigation granted a motion for judgment on the pleadings against BCS, noting the following as its reasoning:

> [O]nce again, the court is faced with an unrepresented LLC [BCS].  The defendants have communicated to the court that they are attempting to find a third set of counsel to enroll on their behalf.  In the meantime, . . . counsel for the Trustee had to file yet another motion to compel the production of documents, which the court [] granted . . . .  The court has lost patience and will not allow [] [BCS] to continue to thwart the orderly process of this case to trial.

(Docket Entry # 161-3, pp. 4-5).  Plaintiff argues that, like the bankruptcy court, this court should also "shut down [d]efendants' game."[16]   (Docket Entry # 161, p. 7).

---

[15] In referring to the bankruptcy litigation cited by plaintiff, this court will cite to the page numbers of Docket Entry # 161-3, which is a copy of the bankruptcy court's order.

[16] Defendants make no attempt to address plaintiff's discussion of the bankruptcy litigation or the bankruptcy court's order highlighting BCS's continued attempts "to thwart the orderly

Plaintiff asks this court to impose "all appropriate and permitted sanctions [under Rule 37] against [d]efendants, including but not limited to (1) preventing [d]efendants from avoiding discovery obligations on the basis of its latest [] 'breakdown' with its current counsel; (2) monetary sanctions to compensate [p]laintiff for its attorneys' fees and other costs associated with trying to obtain discovery from [d]efendants, including filing th[e] motion [for sanctions], (3) and default judgment against [] [d]efendant[s]." (Docket Entry # 160, pp. 1-2). Alternatively, "in the event [this] [c]ourt declines to issue sanctions," plaintiff seeks "an order compelling [d]efendants to complete their document production in no more than fourteen days and, upon failure to comply with such order compelling production, to issue sanctions against [d]efendants under [] Rule . . . 37(b), including but not limited to attorneys' fees and a default judgment against all [d]efendants." (Docket Entry # 160, p. 2).

Defendants, in turn, deny that sanctions are warranted and maintain that they have complied with the March Order and their

---

process of [that] case to trial."[16] See (Docket Entry # 161-3, p. 3); see generally (Docket Entry # 203). Although defendants do not contest the admissibility (or relevancy) of the bankruptcy litigation filings here, this court notes that it "can and does take judicial notice of the docket of other courts." Smith v. Grondolsky, 299 F. Supp. 3d 287, 290 (D. Mass. 2018), aff'd, No. 18-1316, 2019 WL 10378245 (1st Cir. Sept. 4, 2019).

discovery obligations.  (Docket Entry # 203, pp. 2, 6).

Moreover, defendants argue that "by (i) demanding that

[d]efendants subpoena their own customers despite [this court's]

unequivocal[] ruling that the [March] Order does not require the

service of subpoenas; (ii) refusing to cooperate with

[d]efendants on an alternative (and permissible under the

[March] Order) third-party discovery plan; and (iii) failing to

depose any third-parties or serve additional subpoenas after

serving 63 of them, [p]laintiff has manufactured this discovery

dispute to seek sanctions in lieu of collecting more customer

documents."  (Docket Entry # 203, p. 6).  According to

defendants, plaintiff has adopted and "launched [a] 'sanctions

or bust' case strategy," wherein it served 63 "subpoenas to

[d]efendants' customers and received over 23,300 documents as a

result."  (Docket Entry # 203, p. 4).  Furthermore, defendants

allege that "[p]laintiff has repeatedly refused to work with

[d]efendants to come up with an alternative third-party search

protocol."  (Docket Entry # 203, p. 4).  Defendants insist that

"to their knowledge all responsive documents have been

produced," including "IFT's document production."  (Docket Entry

# 203, pp. 7-9).  Consequently, they argue, plaintiff falsely

alleges that defendants have failed to produce responsive

documents.  (Docket Entry # 203, pp. 7-9).

Under Rule 37(b)(2), a court may impose sanctions against a party for failing "to obey an order to provide or permit discovery," including (but not limited to):

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A); see Melendez-Garcia v. Sanchez, 629 F.3d 25, 33-34 (1st Cir. 2010). "The court must [also] order the disobedient party" and/or its attorney "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Additionally, "[i]f a party fails to provide

information" required under Fed. R. Civ. P. 26(a) or (e),[17] Rule 37(c) permits a court to enact the following measures: restrict that party from subsequently using such information in a motion or at a hearing or trial ("unless the failure was substantially justified or is harmless"); "order payment of [] reasonable expenses, including attorney's fees, caused by the failure"; "inform the jury of the party's failure"; and "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)."  Fed. R. Civ. P. 37(c)(1).

"The imposition of sanctions under Rule 37[] is left to the discretion of the trial court."  Patel v. 7-Eleven, Inc., No. CV 17-11414-NMG, 2020 WL 6940124, at *2 (D. Mass. June 24, 2020); see also Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003) ("[D]istrict courts [have] considerable leeway in the exercise of [] [their] admitted authority to punish noncompliant litigants.").  "The choice of an appropriate sanction must be handled on a case-by-case basis."  Young, 330 F.3d at 81. Accordingly, "[w]hen noncompliance occurs, the ordering court

---

[17] Generally stated, Fed. R. Civ. P. 26(a) delineates the categories of information a party must disclose to another, and Fed. R. Civ. P. 26(e) describes a party's ongoing duty to supplement a disclosure or discovery response when "ordered by the court" or when "the party learns that . . . the disclosure or response is [materially] incomplete or incorrect, and [] the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  See Fed. R. Civ. P. 26(a), (e).

should consider the totality of events and then choose from the broad universe of available sanctions in an effort to fit the punishment to the severity and circumstances of the violation." Id. The First Circuit has "set out a non-exhaustive list of factors for consideration when reviewing a Rule 37 motion for sanctions," including: "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions." AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 435 (1st Cir. 2015).

To begin with, this court notes that nearly two years have passed since the March Order (Docket Entry # 103); nearly a year has passed since defendants' counsel at the April 12, 2021 hearing (Docket Entry # 154) represented to this court and plaintiff that it would complete defendants' production by May 12, 2021 (Docket Entry # 157, 6:5-15, 8:18-23); and nearly 300 days have passed since defendants' counsel at the July 14, 2021 hearing (Docket Entry # 172) represented to the court and plaintiff that it possessed, and was reviewing, all of IFT's documents (Docket Entry # 198, 24:7-10, 27:7-8); see (Docket Entry # 198, 27:7-8). Defendants now allege that they "have given all of their documents to their former counsel and to

19

their knowledge all responsive documents have been produced."
(Docket Entry # 203, pp. 7-8).  However, as plaintiff notes,
"[i]t is difficult to imagine that [d]efendants' document
production could have been complete," as defendants have
"produced a total of four documents" since the March Order (and
"no documents subject to" the March Order).  (Docket Entry #
161, p. 5).

In an attempt to demonstrate compliance with their
discovery obligations, defendants list the Bates Numbers of
"documents produced by [d]efendants," "well over 114 pages"
(Docket Entry # 203, pp. 9-10).  Defendants do not indicate,
however, how many of these documents they produced since the
March Order (if any) and whether those documents were subject to
the March Order.  It also unclear how many documents defendants
have produced (if any) since their representation at the April
2021 hearing that it would complete IFT's production within 30
days.  See (Docket Entry # 157, 6:5-15, 8:18-23, 28:18-25); see
generally (Docket Entry # 203).  As previously noted, however,
Sheehan Phinney represented at this court's April 2021 hearing
that it was still reviewing Sunstein's metadata and thus could
not "represent . . . that [defendants'] document production
[was] complete."  (Docket Entry # 157, 6:5-10).  It is therefore
not clear to this court that defendants subsequently (and
improperly) withheld any documents from Sheehan Phinney's review

20

of those documents (as plaintiff suggests), or whether Sheehan Phinney simply determined that there were no other responsive documents to produce (as defendants suggest).

Under the present circumstances, this court finds that an entry of default judgment against defendants is not appropriate at this time. See AngioDynamics, 780 F.3d at 435-436 (1st Cir. 2015) (noting that the entry of default judgment is a "'drastic sanction'" and that a court should consider, among other factors, "the adequacy of lesser sanctions" (citation omitted)); Companion Health Servs., Inc. v. Kurtz, 675 F.3d 75, 84 (1st Cir. 2012) ("As th[e] remedy [of default judgment] is 'contrary to the goals of resolving cases on the merits and avoiding harsh or unfair results,' the district court . . . must balance these 'competing considerations' before entering default." (citation omitted))); Pomales v. Celulares Telefonica, Inc., 342 F.3d 44, 48 (1st Cir. 2003) ("Disposition on the merits is favored."). Considering "the totality of the circumstances," this court also declines to impose other Rule 37 sanctions against defendants at this time. See Young, 330 F.3d at 81. Defendants staunchly maintain that they have completed their production (Docket Entry # 203, 7-8) and, although their production has been slim, this court does not have sufficient cause to question their assertion and impose sanctions against them. See Patel, 2020 WL 6940124, at *2; Young, 330 F.3d at 81.

As for plaintiff's motion for injunctive relief (Docket Entry # 128), which it renewed in its motion for sanctions (Docket Entry # 160), this court "must consider four factors":

> '[plaintiff]'s likelihood of success on the merits'; 'whether and to what extent [] [plaintiff] will suffer irreparable harm' in the absence of injunctive relief; 'the balance of [relative] hardships,' that is, the hardship to [] [defendants] if enjoined as opposed to the hardship to [] [plaintiff] if no injunction issues; and 'the effect, if any, that an injunction [or the lack of one] may have on the public interest.'

CVS Pharmacy, Inc. v. Lavin, 951 F.3d 50, 55 (1st Cir. 2020) (quoting Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013)). The "'likelihood of success is the main bearing wall of the four-factor framework.'" Harnett, 731 F.3d at 10 (citation and brackets omitted). As the party seeking the preliminary injunction, plaintiff "bears the burden of establishing that these four factors weigh in its favor." Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006). For the reasons discussed above with respect to plaintiff's motion for sanctions (Docket Entry # 160), the likelihood of success is absent. Given this court's conclusion that plaintiff has not established a likelihood of success on the merits, it need not discuss the remaining factors for injunctive relief, namely the risk of irreparable harm to plaintiff in the absence of injunctive relief, the balance of equities, or whether the requested injunctive relief would comport with the public

interest.  See New Comm Wireless Servs., Inc. v. SprintCom,
Inc., 287 F.3d 1, 9 (1st Cir. 2002) ("The sine qua non of this
four-part inquiry is likelihood of success on the merits: if the
moving party cannot demonstrate that he is likely to succeed in
his quest, the remaining factors become matters of idle
curiosity.").

    This court, however, reiterates that "[r]ules are rules—and
the parties must play by them." Mendez v. Banco Popular de
Puerto Rico, 900 F.2d 4, 7 (1st Cir. 1990).  A court "must often
be firm in managing crowded dockets and demanding adherence to
announced deadlines," and "parties should not be allowed
casually to flout [] or painlessly [] escape the foreseeable
consequences of noncompliance." Id.  This court is sensitive to
the fact that the attorney-client relationship is often a
fragile one, and that budgetary and other concerns can fray such
a relationship, but this case cannot continuously be sidetracked
because of a party's persistent issues with its counsel.
Similarly, while the COVID-19 pandemic and defendants' personal
difficulties may complicate their ability to litigate this
matter, this court cannot allow such issues to restrict
plaintiff's own ability to litigate its claims and this court's
ability to facilitate an orderly pre-trial process.  Thus, to
the extent defendants attempt to delay any discovery procedure

in this case moving forward, this court advises that doing so will not be without consequence.

CONCLUSION

For the foregoing reasons, plaintiff's motion for sanctions (Docket Entry # 160) is **DENIED.**  This court also **RECOMMENDS**[18] that plaintiff's motion for injunctive relief (Docket Entry # 128), renewed in its motion for sanctions (Docket Entry # 160), be **DENIED.**  Upon review of the existing schedule in this action (Docket Entry ## 43-1, 61), this court modifies the schedule as follows: the parties shall complete fact discovery by April 15, 2022; plaintiff shall identify any expert witnesses by April 29, 2022; defendants shall identify any expert witnesses by May 13, 2022; the parties shall complete all expert witness depositions by June 10, 2022; and the parties shall file any motions for summary judgment by July 15, 2022.

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[18] Any objections to the Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made, and the basis for such objection should be included.  See Fed. R. Civ. P. 72(b). A party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.